FILED
05/18/2022
Shirley Faust
CLERK
Missoula County District Cou
STATE OF MONTANA
By: Cheyenne Campbell
DV-32-2022-0000571-UT
Larson, John W
1.00

John Morrison
Scott Peterson
MORRISON, SHERWOOD, WILSON & DEOLA PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, Montana 59624-0557
(406) 442-3261
john@mswdlaw.com
speterson@mswdlaw.com

*Attorney for Plaintiffs*

## MONTANA FOURTH JUDICIAL DISTRICT, MISSOULA COUNTY

| JASON LEWIS, | Cause No._____ |
|---|---|
| Plaintiff, | |
| v. | COMPLAINT |
| OLD REPUBLIC INS. CO; SEDGWICK CLAIM MANAGEMENT, INC. | |
| Defendants. | |

### PARTIES, JURISDICTION, AND VENUE

1. Jason Lewis is a resident of Missoula County. At all relevant times, he was a claimant with a worker compensation claim.

2. Old Republic Insurance Company ("Old Republic") is a worker compensation insurance company with its headquarters in Pennsylvania. Old Republic was the insurer for Mr. Lewis's claim.

3. Sedgwick Claims Management Services, Inc. ("Sedgwick") is a corporation with its headquarters in Tennessee. Sedgwick managed Mr. Lewis's claim on behalf of Old Republic.

4. Jurisdiction is proper in this court.



5. Venue is also proper as the defendants are foreign corporations, and Missoula County is Lewis's home county.

## FACTUAL BACKGROUND

6. In 2018, Lewis worked for AT&T/DirecTV, LLC as an installer. During an installation job, he felt a pain through his neck and shoulder, and he made a worker compensation claim.

7. AT&T/DirecTV, LLC use Old Republic as its worker compensation insurer.

8. Sedgwick managed the claim on Old Republic.

9. Defendants either insure claims or are in the business of handling and adjusting claims.

10. Defendants accepted liability on Lewis' claim.

11. Lewis received treatment from Dr. Justin Jacobson.

12. In January 2020, Defendants terminated Mr. Lewis' temporary total disability (TTD) without a formal impairment evaluation or any vocational workup or job releases, even though everyone agreed that he could not do any overhead lifting and, therefore, could no longer perform his time of injury job.

13. Defendants reinstated benefits for a couple of months, but in April 2020, they again terminated benefits. This time there was no new examination nor was there an impairment evaluation or a vocational workup.

14. Mr. Lewis was without any benefits for a period of eight months. Finally, in January 2021, an interim agreement was reached in which all past due TTD was paid. It was also agreed that TTD benefits would be ongoing.

15. In November 2020, Dr. Jacobson indicated that both a functional capacity exam (FCE) and impairment evaluation was required for Mr. Lewis. Defendants would never arrange either the FCE or evaluation despite numerous requests that they do so.

16. In January 2021, Lewis underwent a vocational evaluation. Mr. Fowler developed an alternative job analysis that was ostensibly submitted to Dr. Jacobson in April/May of 2021.

17. In May 2021, Defendants again cut off Lewis' benefits, claiming that (1) Dr. Jacobson approved the alternative job analysis and (2) that Jacobson had determined he had reached medical stability—both prerequisites to ending temporary benefits.

18. Yet, the "medical stability" Defendants claimed occurred was based on a medical visit from 16 months prior, and an appointment that was not a formal impairment evaluation (which had not yet occurred).

19. Indeed, Dr. Jacobson had not seen Mr. Lewis in those 16 months (despite Mr. Lewis' attempts to see him) and thus, had no indication of Mr. Lewis's condition in May 2021. What is more, Dr. Jacobson indicated both an FCE and impairment evaluation were necessary to evaluate Mr. Lewis condition——an exam and evaluation that had not occurred because Defendants refused to order them. Given these facts, Defendants knew that Dr. Jacobson could not meaningfully evaluate and opine on Lewis' capacity to perform the jobs contained in the analysis.

20. After May 2021, Lewis would receive no further temporary benefits, and would go without any indemnity benefits until the case eventually settled in January 2022.

21. Between the termination of benefits and the case settling, Lewis's counsel made numerous requests to have benefits reinstated, and for an FCE. Defendants rejected these requests, and only offered $15,000 to settle all claims - far below the value of Mr. Lewis' claim. What is more, they did not provide an explanation for their $15,000 offer.

22. Ultimately, Lewis had to arrange for both his FCE and impairment evaluation, something that was Defendants responsibility.

23. The case ultimately settled for $55,000 in January 2022.

24. Even post-settlement, Defendants delayed in ordering a settlement check, delayed in paying the impairment evaluation, and to date, have still not paid for the FCE evaluation that they agreed to pay.

## COUNT I
## UTPA (OLD REPUBLIC)

25. Lewis incorporates all previous allegations herein.

26. Old Republic is an insurer.

27. Old Republic had an obligation to adhere to Montana's UTPA in handling Lewis's claim.

28. Old Republic violated the UTPA in several ways. This includes failing to properly investigate, refusing to pay claim without conducting a reasonable

investigation, and failing to pay benefits or attempt settling the claim when liability was reasonably clear.

29. Lewis was damaged by Old Republic's conduct.

## COUNT II
## COMMON LAW BAD FAITH
## (OLD REPUBLIC AND SEDGWICK)

30. Lewis incorporates all previous allegations herein.

31. For the reasons explained, Defendants are also liable as matter of common law bad faith.

32. This conduct caused Lewis damages.

## COUNT III
## PUNITIVE DAMAGES

33. Lewis incorporates all previous allegations herein.

34. Defendants acted with actual malice in handling Lewis's claim. Specifically, they knew that they were not complying with Montana law, knew they had insufficient factual basis to take the actions they took, and knew that their actions had a high probability of harm to Mr. Lewis, given that they knew he depended on those benefits. Despite knowing all of this, Defendants took they actions they did anyway.

35. Defendants are therefore liable for punitive damages.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

1. Compensatory damages, including emotional distress and financial losses;
2. Attorney's fees and costs; and

3.  Any other relief the Court deems just and proper.

Dated this 18th day of May 2022.

                                        /s/ Scott Peterson
                                        Scott Peterson
                                        MORRISON, SHERWOOD, WILSON & DEOLA PLLP